[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT NO. 171
The defendant's motion is predicated upon the assertion that, due to the plaintiff's commencement of this dissolution action, a shareholders' agreement required the defendant to sell his stock back to a closely held corporation (the Cortlandt Group, Inc.) at book value. The defendant argues that this Court is bound by the terms of the shareholders' agreement. The defendant, however, has produced no authority to support the proposition that a family court's broad allocative power can be limited by the provisions of a shareholders' agreement.[1] See Krafick v. Krafick,234 Conn. 783, 792, 663 A.2d 365 (1995). Furthermore, the defendant has relied upon cases that undermine his contention concerning the valuation of the closely held stock. For example, in Turgeonv. Turgeon, 190 Conn. 269, 276, 460 A.2d 1260 (1983), the court stated that "[i]t is generally recognized that closely held corporate stock cannot be valued reasonably by the application of any inflexible formula." Moreover, in Stearns v. Stearns,4 Conn. App. 323, 328, 494 A.2d 595 (1985), the Appellate Court emphasized that "[i]n assessing the value of . . . property . . . the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation." CT Page 612 (Citations omitted; internal quotation marks omitted.) Although the Stearns decision stated that the trial court properly considered a buy-sell agreement, it did not hold that the lower court was required to rely exclusively upon that agreement. Id., 327-329.
The defendant's arguments relating to the allegations of fraud are also unpersuasive. The Appellate Court has stated that "[w]hile neither marriage nor an action for dissolution serves, in and of itself, to transfer an interest in property from one spouse to another . . . the institution of judicial proceedings serves, at least between the parties, to preserve the status quo from impairment by fraud. . . . In other words, once a dissolution action is filed, any transfer of assets for insubstantial consideration reduces the amount of the marital estate and frustrates the equitable distribution of property." (Citation omitted; internal quotation marks omitted.) Gaudio v.Gaudio, 23 Conn. App. 287, 309, 580 A.2d 1212, cert. denied,217 Conn. 803, 584 A.2d 472 (1990).
In the present case, the stock was sold back to the Cortlandt Group precisely because the defendant was embroiled in this divorce litigation. Although the plaintiff's valuation expert has attested that the stock is worth over $500,000, the stock was sold for less than $75,000. It is also noteworthy that the defendant's family owns about 70 percent of the corporation's stock, and the defendant's father is the chairman of the board of directors. In addition, the plaintiff has attested that her marriage with the defendant was already experiencing difficulties when the shareholders' agreement was executed. Based upon the foregoing, the Court cannot rule out the possibility that the stock transfer was fraudulent. See Gaudio v. Gaudio, supra,23 Conn. App. 307-310.
For all of the aforementioned reasons, the defendant's motion is denied.[2]
Owens, J.